Good morning. Mr. Hardin was convicted of felon in possession. That came about because there were two firearms found in a room that he shared with his wife and a house that he shared with his father. That generated a constructive possession theory that is the main issue in our appeal here today. There was also a separate incident the same day that he was arrested in where he was seen outside the home by his probation officer with his hands in his pocket of his sweatshirt and would not remove his hands when requested to do so by the probation officer. That, if you will, led to the part of the case where the government argued that there was actual possession of the firearm. Well, then he ran into the house. He ran into the house. And then he came out and said he had a video. Correct. And then the search followed soon thereafter. I don't know if he was in custody at the time he came out with the videotape or not, but the search followed. Our argument here is that there was not sufficient evidence of constructive possession because of the lack of exclusivity, because there's no admissions, there's no fingerprints. There's nothing other than the fact that he shared this room with his wife and a house shared with his father. That led to the problem that we have with the trial in that Judge Rohl gave the standard, if you will, possession instruction that says it can be constructive or it can be actual. And our argument here today is not that that instruction is error in itself, but under the facts of this particular circumstance, where there is no legal grounds for a constructive possession, that it is error, then, to give an alternative jury instruction, alternative theory jury instruction. For example, one of the weapons on his side of the closet, it was one closet, wasn't there? No. I think there was. Shared with his wife?   I think they were under a mattress. One weapon was under the king-size bed mattress or the adult mattress, and one weapon was under the – there was a baby crib in the room also, and there was a weapon under the baby crib. So our argument is, and there's a list of constructive possession cases cited in the brief. But also some ammunition. Pardon? There was some ammunition. Ammunition that was – that was for the 57 Magnum, I think. There was ammunition in the dresser, and it suggested a third weapon because it didn't fit. I think it was 15. It didn't fit either of the seized weapons. But our argument here is, let's parcel out a few of the actual possession part, where he had his hands in his pockets and he was back and back by the probation officer, and let's deal solely – if this case went to trial solely on the constructive possession, I don't believe it would have survived a Rule 29 challenge. And if you use that as a standard, if you will, then why is it proper then in a circumstance like this to give alternative theory instruction where standing alone, either or both perhaps of those theories would not have generated the sufficient evidence necessary to sustain a conviction? You better understand that argument. Well, there was, you know, a set of circumstances. Yes. And you've got the – you've got the basic construction. Possession can either be actual or constructive. Correct. Well, our argument is that there – and, you know, if you disagree with this, obviously we don't win the appeal – argument is that there's not enough information to support a constructive possession argument or instruction, that being that, and the case is cited in the brief, the lack of exclusivity here. This is not unlike being a passenger in a car with his contraband found. This is not unlike the case – I think it was a Nevada case where there was – it was another car case where there was a machine gun in a duffel bag. Both those cases held that just being there, kind of in a mere presence of it. Why did he run in the house? Pardon? Why did he run in the house? Well, it could be a number of reasons. Obviously, he could have had a gun in his pocket, for all we know. He could have had some other kind of contraband in his pocket, and the government suggested that as an alternative at trial itself. I mean, clearly, he was hiding something. What it was, we don't know. Go ahead. I wanted to – I understood your argument to be that the jury had to unanimously find either constructive possession or actual possession, that if four of them – I don't know how many jurors there were, a dozen – six of them found constructive and six of them found actual, then he's off because it isn't a unanimous verdict. Did I misunderstand your argument there? No. That's the second argument. Well, that's the second. Once – if you – if you lose the joint part of the visual – It was the sufficiency of the evidence. Correct. And if – I thought you had passed on it. Right. And that does lead into the second argument of the case. Should there have been a unanimity instruction, if the judge is going to give two theories of liability, if you will, should there have been a unanimity instruction? And we think in this case that there probably should have been under these circumstances. You know, the first battle, if you will, is judge, don't give a constructive possession instruction. I mean, don't even let it go to the jury on that theory. The second battle, well, if you're going to do it, make sure that the jury understands what it is they're supposed to do. They're supposed to decide on a theory. Now, obviously, there's a court cited by the government that there's no constitutional right, if you will, to a single theory when dual theories can legally both apply to a case. And the government most recently cited cases, the older case of United States v. Schabb, where it's common practice in Arizona where first-degree murder in a single count goes to the jury both as felony murder and as premeditated murder. And as problematic as that is, that seems to be okay, our argument here is not that the instruction is wrong, that there's some constitutional bar to alternative theories, but that when there's no legal ground to support one of those theories, then it is error to give both theories as alternative means of criminal liability. For example, in Schabb, in the felony murder, first-degree premeditated murder example, if the judge, if the facts were such that there was no felony murder, but the judge instructed the jury that you can find either felony murder or you can find premeditated murder and decide whether or not there's first-degree murder, I would say that's clearly error because the facts don't support one of those theories. And that gets back to what we're arguing here today. The facts. Kennedy. But what facts in this case supported what theory? What facts supported what theory? In my view, the actual possession would have had to have been, the jury would have had to have found that he had the gun in his pocket when he was confronted by the probation officer. That's why he acted the way that he did. The constructive possession would have been the discovery of firearms in a room he was in with his wife several minutes or hours later, whenever that might have been, because he clearly wasn't actually possessing them at that time, if ever. So our argument is that when there is not a sufficient basis for the constructive possession, it ought not to be given as a theory of criminal liability, because then you run into the related issue of the unanimity instruction, which was not given. What side of the bed was the gun located? I don't know. I think Mr. Leonardo argued in his closing that it was in the middle of the bed, the inference being that, you know, had he slept on that bed, he would have been aware that the gun was under the mattress. But I'm sure Mr. Leonardo can answer that question. If I could reserve any remaining time. All right. Thank you. Please, the Court, counsel. My name is Nathan Leonardo, and I'm representing the government in this case. It was a thin case. Well, it was a circumstantial evidence case, and the jury was instructed, as they always are, that circumstantial evidence is just as good as direct evidence. And the circumstantial evidence that was presented could certainly, and viewed in the light most favorable to the prosecution, as is the standard, could certainly be enough for a rational jury to find the defendant guilty of the crimes that he was charged with. And that's what the district court found, and that was an error in this case. I take issue with the argument that this is even constitutes dual theories of guilt, because the fact is that possession, the legal definition of possession, includes both actual and constructive possession. It's not that there are two theories. It's just two ways of accomplishing the same thing. So half of the jury could have believed that he was in actual possession because the lump was fired. The other half could believe that he was in constructive possession because of the location of the gun across the bed and where it was. That's true. But I think even those people that found constructive possession would have looked towards that event with the lump in his pocket as further evidence of the constructive possession. And I think that the people, if any of the jurors, if there was a split among these two supposed theories, the jurors that found actual possession would, in fact, also be finding constructive possession because they are the same thing. They are part of the same definition of possession. And constructive possession is actually subsumed by actual possession. You can't actually possess something and not have dominion and control over it. So they're really the same thing. And there needed to be no unanimity instruction whatsoever. In fact, there's a case on point from the Tenth Circuit, U.S. v. Barton, where the same circumstances occurred, and they said that, no, you don't have to have a unanimity instruction in a case like this because actual and constructive possession are the same thing, which makes sense and is consistent with the case law out of this circuit in Kalama, which states that they are the same thing and both are within the definition of possession. The evidence is sufficient for either one of these theories, and the evidence is sufficient to support a guilty verdict. The defendant, not only, this isn't a mere possession case, as are just about all the cases cited by the defense in their brief. This is a case where contraband just wasn't just found near the defendant in a shared room, but all of the circumstances beforehand indicated that the defendant had something that he wasn't supposed to have, some contraband. He was intentionally trying to hide it. He ran into his house, and when he came out, he didn't have it anymore. So it was reasonable and rational for a jury to conclude that what he had were the guns that were found in his room, one underneath his own mattress and one underneath his own baby's crib. And there was ammunition found in the defendant's dresser that fit. How do we know that it was his dresser? Well, that's what the testimony was. Was it his clothes found in his dresser, in the dresser? That's not on the record. The only. But how do we know it was his dresser? Well, we know only because the probation officer testified in response to a question about finding ammunition in his dresser. He said that, yes, it was he found it in his dresser. But what supported that? Well, that wasn't explored on the record. So. That's what I mean. It was a little thin. Right. But what supported the fact that this was the defendant's room and all that in the first place was that the probation officer, when he first gets the defendant as a client, I guess you could call it, goes to his house for a home visit. The defendant tells the probation officer, this is where I live, this is where I sleep, this is my room. Yes, he shared it with his girlfriend and his baby. But. That was some two years beforehand. That's correct. But the probation officer, it wasn't a period of just that and then a two-year period and then a second home visit. It was home visits occurring throughout the supervision of this defendant. So it wasn't as if this was a one-time incident. But that, I'd like to make a correction as far as. No fingerprints were found on any of the weapons. No fingerprints. It was circumstantial evidence. So the weapons checked for fingerprints. That the probation officer testified he could not remember whether or not that was done. That's all that the record shows. Well, I mean, but you're the prosecutor. Right. Well, the record has no indication whether or not the firearms were fingerprinted. However, I believe they, from my recollection, that they were and that the results were inconclusive. They couldn't match it up to anybody. The fingerprints were not of, I believe, were not of. And the weapon was found in the middle of the bed. The weapon was found in between the mattress and the box spring in the middle portion of the bed was the testimony. And then underneath the mattress, in between the mattress and the springs, also in the baby's crib. And the ammunition found in the dresser did fit the .357 that was found underneath the defendant's mattress. So. Do we even know how old the baby was? I mean, we don't know any of that. No. No, we don't. Young enough to sleep in a crib. How do we know that? Because that was the only other sleeping area for an infant in the entire house. So, essentially, if it were, this would be a much closer case if it were just the firearms being found in the room where the defendant shared living quarters with his girlfriend and his baby. Do you think that the bulge in the sweatshirt and the running from the probation officer sort of gets you really over the hurdle? It definitely does, because that shows that he had something. The probation officer ordered him to take his hands out of his pocket and show him what he had. He was worried about his own safety. The defendant refused to. He, in fact, kept his hands in his sweatshirt pocket the entire time, even when he was running from the probation officer. Refusal to take his hands out in the first place is a violation of his probation. So he was willing to risk violating his probation to hide whatever this was. And when he came out and showed the probation officer this videotape and keys, those items were clearly innocuous. And so he, it's a rational conclusion that he had something that he was trying to hide. He didn't want to. A contraband of drugs. But they didn't find that. The record contains nothing. There was no contraband other than the firearms found in his bed, under his mattress, and under his baby's crib. So the rational conclusion for a jury would be that, in fact, what he was hiding were those firearms. And for that reason, the evidence in this case was sufficient to support the verdict. It was sufficient to support the instructions. And the instructions were not error, let alone plain error. And if the Court has no further questions, I will take a seat. All right. Thank you. I just want to make reference to the Tenth Circuit case discussed by Mr. Leonardo for the proposition that you can give constructive and actual possession. It's all one component of the law. They're not inconsistent with each other. The Tenth Circuit case you discussed, Barton, is factually different and doesn't go to the issue that we're actually dealing with here in Barton. Someone is a victim of a shooting, sees the defendant with a gun in his hand, sees the defendant run into his apartment. The cops go into the apartment. They search the apartment. They find the gun. And the difference is, from that case to this case, is, one, we actually see a gun in his hand. We have direct evidence of actual possession. And, two, back at the apartment, he was the sole occupant and sole user of that apartment. So we don't have problems with the constructive possession that we have in this case. So for those reasons, the rule in Barton, First Client seems to control, really doesn't because of the facts. Thank you. Thank you. The matter will stand submitted. And we'll go to the next item.
judges: Pregerson, Beam, Paez